## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **Clarence Sims** | * | |
| **145 Dandridge Ct., Unit 202** | * | |
| **Stafford, VA 22554** | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| | * | **Case No.:** |
| | * | |
| **v.** | * | |
| | * | **JURY TRIAL DEMANDED** |
| | * | |
| **Alexandria Sheriff's Office** | * | |
| **2003 Mill Road** | * | |
| **Alexandria, VA 22314** | * | |
| | * | |
| *Defendant*. | * | |
| | * | |
| | * | |

## COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES

COMES NOW, Plaintiff, Clarence Sims (hereinafter "Plaintiff" or "Mr. Sims"), by and through his undersigned counsel, complains against Defendant, the Alexandria Sheriff's Office (hereinafter "Defendant") and in support thereof states as follows:

## INTRODUCTION

1. This case arises from the unjust discrimination and hostile work environment suffered by a long-serving deputy sheriff from his own employer, resulting not only in his forced resignation but also manifesting in retaliation through obstruction of his efforts to secure subsequent employment. Despite his many years of service and satisfactory performance, Plaintiff—a Black man over the age of forty—has been subjected to starkly disparate

1

treatment in contrast to his younger, non-Black comparators. ***This case is about when law enforcement are fearful of their own brothers and sisters in uniform.***

1.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967 ("ADEA"); the Civil Rights Act of 1866, Section 1983(a) ("Section 1983"); and the Virginia Human Rights Act ("VHRA"), Va. Code Ann. §§ 22-3900 *et seq.*, as amended by the Virginia Values Act ("VVA") for the Defendant's unlawful harassment, discrimination, and hostile work environment based on race and color (Black), age (40+), and retaliation for participation in a protected activity against the Plaintiff.

## JURISDICTION AND VENUE

2.  This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), Section 1981/1983, and the VHRA/VVA, to redress and enjoin employment practices of the Defendant.

3.  This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4.  Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Alexandria, VA.

5.  Additionally, venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transacts substantial business in this District, and Defendant maintains employment records related to this action in the District.

## EXHAUSTION OF REMEDIES

6. Plaintiff has exhausted all of his administrative remedies.

7. Plaintiff filed a Charge with the Washington Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") on January 25, 2021, alleging harassment, hostile work environment, racial discrimination, age discrimination, and retaliation for his participation in a statutorily-protected activity. See, Exhibit 1.

8. The Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Right-to-Sue Letter through the EEOC electronic portal, which Plaintiff received on July 28, 2022. See, Exhibits 2 and 3.

9. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

10. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

11. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

12. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

**PARTIES**

13. Plaintiff, Mr. Clarence Sims, is a Black man who resides in Stafford County, VA, and has worked as a Deputy Sheriff for Defendant for over a decade.

14. Defendant is a law enforcement agency located in Alexandria, VA, employing approximately 205 deputy sheriffs and civilian personnel. Defendant is responsible for jail operations as well as service of all court legal documents, execution of arrest warrants, and general public safety and law enforcement. All powers, responsibilities and duties of the Sheriff's Office derive from common law, the Virginia Constitution, the Code of Virginia and the City of Alexandria Charter.

15. During the relevant period, Defendant employed Plaintiff.

16. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII, Section 1981/1983, the ADEA, and the VHRA/VVA.

**FACTUAL ALLEGATIONS**

2. Defendant subjected Mr. Sims to an ongoing pattern of discriminatory and retaliatory conduct ultimately resulting in his resignation in lieu of dismissal in May of 2019, and continuing past Mr. Sims' resignation in the form of obstruction of his efforts to secure subsequent employment.

3. Mr. Sims was first employed by the Alexandria Sheriff's Office in April 2007. Throughout his career with the Alexandria Sheriff's Office, Mr. Sims consistently received positive performance evaluations and promotions. His annual performance evaluations in 2015 noted that his "great sense of humor and outgoing disposition has been beneficial in his

4

supervision of . . . some of the most challenging and High Risk inmates assigned to this facility. Deputy Sims continues to perform his duties at a satisfactory and above level . . . He is dependable and can always be counted on to get the job done." Another evaluation went on to note, "Deputy Sims has his own unique leadership style. He is an approachable deputy with a big lighthearted personality. This quality mixes well with the program unit that he is charged with supervising and the civilian staff/volunteers that runs the programs. He is respected by staff and inmates alike."

4. In July 2017, Mr. Sims was selected for elevation to Deputy Sheriff IV, citing specifically that his promotion was in recognition of his "dedication and professionalism." He continued to receive overall positive annual evaluations following his promotion, until Mr. Sims' mother's death from severe bone cancer in November 2018.

5. Mr. Sims began to undergo grief therapy through his employer's Employment Assistance Program, and decided to take an overtime assignment with another team in the facility as he was processing his grief at his mother's passing. However, his supervisors on this new assignment quickly began to scrutinize Mr. Sims' work in detail and write him up for any possible infraction.

6. Mr. Sims was reported by a supervisor for missing a round on an educational unit in the facility, which Mr. Sims acknowledged. Despite his strong prior record, approximately two weeks later Mr. Sims was then brought up to Chief Nichols, who informed him that the Sheriff had decided to terminate Mr. Sims' employment, without any prior written or verbal counseling.

7. Mr. Sims sought an appeal of the decision, but was informed that if he did not tender his resignation he would be terminated. The head of the HR department at the Sheriff's Office,

Mr. Baldwin, recommended that Mr. Sims resign rather than be fired, and prepared a resignation letter on Mr. Sims' behalf on May 3, 2019. Mr. Sims agreed to sign the letter on the understanding that his personnel records would reflect only a resignation or early retirement, and not that he had resigned in lieu of termination.

8. In response to his forced resignation, Mr. Sims began the complaint process with the EEOC against Defendant with a self-filed complaint on or about May 28, 2020, and a second complaint on January 25, 2021 alleging discrimination based on race, age and retaliation.

9. In April 2020, Mr. Sims learned that the Prince William County Sheriff's Office had requested to review his personnel records in the process of his hiring for a position and discovered not only that his personnel records indicated "resignation in lieu of termination" as the reason for his departure, but also that his personnel records were full of documentation of alleged Rules of Conduct violations, despite the fact that several of the allegations had been proven unfounded or lacked sufficient evidence to be sustained. Mr. Sims' application with the Prince William County Sheriff's Office was denied on the basis of his personnel record.

10. On May 28, 2020, Mr. Sims filed an initial EEOC complaint about his improper termination (Charge No. 570-2020-01845), and in December 2020 Mr. Sims contacted Mr. Baldwin to find out why his personnel records not only indicated that he had resigned in lieu of termination contrary to their agreement, but also why they painted a far more negative image of his employment history by including unsustained prior charges, thereby preventing him from securing future employment.

11. Among the violations listed in Mr. Sims' personnel record were two sexual harassment charges. However, the charges were unsustained due to insufficient evidence. During his

employment with Defendant, Mr. Sims had been accused of sexual harassment, which was investigated and resulted in his demotion despite the fact that the administrator of the polygraph test Mr. Sims took indicated he had "passed", and subsequent information about his accusers provided ample evidence that the allegations were false. To Mr. Sims' knowledge and belief, one of his accusers of sexual harassment was later fired for having relations with an inmate, and another was herself charged with sexual harassment, further suggesting that Mr. Sims may have been unfairly accused of violations that were unfounded.

12. Despite this fact, the violations remained prominent in Mr. Sims' personnel records, suggesting that there was a pattern of harassment during his employment even though those allegations were dropped. One of the harassment charges indicated a finding of "improper conduct." However, Deputy George Burnham of the Special Investigations Unit concluded in his report that despite finding that Mr. Sims had made comments to a nurse that constituted harassment, "I believe that Deputy Sims was reacting somewhat from what he perceived as mutual bantering. Therefore I am not recommending termination. I am recommending that Deputy Sims receive a 15 workday suspension, a letter of reprimand." Mr. Sims ultimately received only a letter of reprimand and three days of suspension.

13. The memorandum of these sanctions was made a permanent part of Mr. Sims' personnel file. Based upon Mr. Sims' knowledge and belief after speaking with other Black Officers, the Alexandria Sheriff's Office has a pattern of disproportionately disciplining Black Officers and deliberately tarnishing their personnel records by charging them with numerous Rules of Conduct violations, thereby hindering their ability to seek employment with other law enforcement agencies.

14. Upon information and belief, Mr. Sims understands that another Officer who had been on his team, Deputy Ford (Black, male), also resigned in lieu of termination on the understanding that the circumstances of his resignation would not be referenced in his personnel record, only to discover that a prospective employer had checked his personnel records and learned that he was constructively terminated. Like Mr. Sims, Deputy Ford contacted the Sheriff's Office, after which time his records were changed to show only resignation/early retirement. However, the damage to both men's future careers and employment opportunities had already been done.

15. Upon information and belief, Mr. Sims also understands that on at least one occasion in the past, a Black Officer indicated his intent to leave the Alexandria Sheriff's Office for another law enforcement agency, and Chief/Undersheriff Gleason said to him, "You know I can mess your career up?" These instances demonstrate a pattern of discrimination against Black Officers through a deliberate effort to tarnish their personnel records and prevent them from securing future employment.

16. In addition to race, Mr. Sims has reason to believe that a pattern of age discrimination exists at the Alexandria Sheriff's Office. Another Black Officer, Deputy Morris, who was only two years from retirement, was fired by the Alexandria Sheriff's Office, while similarly-situated White Officers ten to fifteen years younger than Mr. Sims were not pushed to retire based on improper conduct and were instead fast-tracked into leadership positions beyond experienced Black Officers.

17. Mr. Sims provided the EEOC with a list of similarly situated non-Black comparators who committed serious violations that were similar to or more egregious than what Mr. Sims

8

was accused of, yet were not pushed to retire or severely reprimanded, and in some cases were promoted:

- Deputy Brian Mauck, a Caucasian male, was hired and has had a successful career with Defendant despite a prior arrest for sexual battery of a minor.

- Deputy Villatoro violated facility rules by opening segregated unit doors leading to an inmate fight.

- Deputy Corso pulled his service weapon on another deputy in the locker room and was only suspended for thirty (30) days.

- Deputy Brian Wade engaged in sexual misconduct in carrying on an extra-marital affair with Deputy Branch, resulting in a child.

- Chief Schula engaged in sexual misconduct in carrying on an extra-marital affair with the wife of his subordinate, Deputy Crane.

- Lt. Grenadier was charged with harassing Deputy Juarez, but was never terminated or asked to resign.

18. Mr. Sims further has knowledge of other similarly situated non-Black officers who resigned and then were able to secure employment despite also having prior Rules of Conduct violations which if discovered, should have prevented them from being hired. Lieutenant Davies applied for the same position at the Prince William County Sheriff's Office as Mr. Sims and was hired, despite prior violations such as insubordination and refusal to carry out direct orders regarding the movement of inmates. Mr. Sims alleges that Lieutenant Davies could not have been hired in this position had he and his personnel record received the same treatment as Mr. Sims.

19. In addition to the discriminatory treatment Mr. Sims alleges he experienced during and after his employment with the Alexandria Sheriff's Office, Mr. Sims further alleges that he has been subjected to retaliation for his HR and EEOC complaints. The Sheriff's Office's attempts to paint Mr. Sims throughout his EEOC investigation as having "a twelve-year history of repeated sexual harassment" where only once was such a charge sustained— with the investigator's conclusion that Mr. Sims did not act with intent to sexually harass the nurse in question—and refusal to make the requested alterations to his personnel record, have ensured that Mr. Sims is unable to secure employment with other law enforcement agencies.

20. Despite having since changed Mr. Sims' record to show "Resignation/Early Retirement" as the reason for Mr. Sims' departure, by previously indicating that Mr. Sims had resigned in lieu of termination, the Alexandria Sheriff's Office caused Mr. Sims to be turned down in the final stages for a position with the Prince William County Sheriff's Office after he had passed all preliminary rounds and tests.

21. Since his termination, Defendant has attempted to characterize Mr. Sims as lacking in professionalism, cherry-picking information from Mr. Sims' performance evaluations in response to his EEOC charge, despite the fact that his performance in the Professionalism criterion consistently met the satisfactory standard, and also that he was later promoted.

22. Defendant attempted to further cast a negative light on Mr. Sims by stating that there had been seven different instances of investigation for misconduct, yet later Defendant admitted that one was deemed unfounded and in two others, sufficient evidence could not be found to support the allegations. Defendant further neglected to indicate which investigations were deemed unfounded, leaving an implication of great professional

misconduct where the facts actually demonstrate multiple unsubstantiated attempts to damage Defendant's reputation. It is clear that Defendant has attempted to cast an unfavorable light on Mr. Sims' record by carefully selecting only the statements from his performance evaluations that support Defendant's characterization of Mr. Sims as an individual with a consistently poor performance record, despite the clear evidence that across his multi-year career with Defendant he demonstrated satisfactory to superior performance, and was on multiple occasions accused of violations such as sexual harassment for which insufficient evidence was found.

23. The discrimination and severe punishment Plaintiff experienced are an unequivocal demonstration of discriminatory and disproportionate treatment of him as a Black man, particularly when comparing his treatment and punishment to his similarly situated non-Black and younger colleagues, and of retaliation against him as an employee who engaged in statutorily-protected activity.

24. The Defendant's discriminatory practices have been effectuated in violation of federal and state statutes, including Title VII of the Civil Rights Act, Section 1983, and the VHRA/VVA.

## COUNT I

### VIOLATION OF TITLE VII - RACE DISCRIMINATION

25. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

26. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an

adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

27. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is Black and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff is a qualified Deputy Sheriff, as he has approximately twelve years of satisfactory performance as an employee of Defendant. Additionally, Plaintiff suffered an adverse employment action directly related to his membership in a protected class pursuant to Title VII, when he was forced to resign in lieu of termination, and subsequently obstructed by Defendant from securing gainful employment after separating from Defendant. Finally, Plaintiff has identified non-Black similarly-situated employees of Defendant who were treated more favorably than Plaintiff, giving rise to an inference of disparate treatment.

28. The work environment and adverse action that Plaintiff was subjected to materially affected the terms, privileges, and conditions of his employment.

29. Defendant knew that Plaintiff was Black prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

30. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

31. Defendant treated Plaintiff in a way that deprived his of workplace safety and otherwise adversely affected his status as an employee because of his race.

32. Similarly situated non-Black employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and his workplace conditions.

33. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

34. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

35. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

36. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

37. Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

38. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

39. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, and costs – and is entitled to all available legal and equitable remedies.

40. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

41. Further, Defendant's treatment and actions are ongoing.

42. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

43. Similarly situated non-Black employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

44. By law, the Alexandria Sheriff's Office must comply with Title VII, but through their conduct have violated Title VII.

## COUNT II

## VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT

45. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

46. When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Complainant must show that: (1) he belongs to a statutorily protected class; (2) he was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on his statutorily protected class; (4) the harassment affected a term or condition of employment[1] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

47. Here, the five (5) elements of a *prima facie* case of a hostile work environment are met. The Plaintiff belongs to a statutorily protected class as a Black man over the age of 40. The

---

[1] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

Plaintiff was subjected to harassment in the form of repeated disciplinary actions and investigations, several of which were deemed unfounded, and severe repercussions for minor infractions such as the decision to seek Plaintiff's termination without any prior written or verbal counseling or opportunity to appeal, as well as the deliberate failure of Defendant to provide prospective future employers with a personnel record simply indicating that Mr. Sims had retired, instead showing that he had resigned in lieu of termination and maintaining documentation of prior unfounded disciplinary charges. There is a basis for imputing liability, where the Sheriff and Defendant's HR Department, acting on the Defendants behalf, subjected the Plaintiff to the above-mentioned harassment, because of his statutorily protected class as a Black man over the age of 40.

48. The actions and conduct of the Defendant as set forth herein created a hostile, offensive, and intimidating work environment and detrimentally affected Plaintiff.

49. The actions and conduct by the Defendant as set forth herein were severe, hostile, and pervasive and constituted discrimination based on race and age.

50. The actions and conduct described herein would have detrimentally affected a reasonable person of the same race and age in Plaintiff's position.

51. Defendant knew or should have known of the hostile work environment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop the hostile work environment.

52. By failing to protect Plaintiff within his work environment; and by allowing for younger, Caucasian employees to receive more favorable treatment than Plaintiff in the terms and conditions of employment, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

15

53. Defendant's actions, and failure to act, amounted to discrimination based on race and age under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment abrogates the states' Eleventh Amendment sovereign immunity. Title VII, through the 1972 amendment known as the Equal Employment Opportunity Act ("EEOA"), provides an enforcement remedy for equal protection violations of state employees through Section 5 of the Fourteenth Amendment.

54. As a direct result of Defendant's above-mentioned unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

## COUNT III

### VIOLATION OF THE ADEA - AGE DISCRIMINATION

55. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

56. The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The plaintiff "must prove, with reasonable probability, that but for the age of the plaintiff, the employment decision adverse to the plaintiff would not have been made." *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1417 (4th Cir. 1991).

57. A *prima facie* case of age discrimination requires a showing of four (4) elements: that he (1) was protected by the ADEA, (2) suffered an adverse employment action, (3) "was performing his job at a level that met his employer's legitimate expectations" at "the time

of the adverse employment action, and (4) was replaced by a substantially younger worker. *Ullrich v. CEXEC, Inc.*, 233 F. Supp. 3d 515, 525 (E.D. Va. 2017).

58. Here, the four (4) elements of a *prima facie* case of age discrimination are met. The Plaintiff is over forty years old and is considered a member of a protected class pursuant to the ADEA. Plaintiff is a qualified Deputy Sheriff, as he has approximately twelve years of satisfactory performance as an employee of Defendant. Plaintiff suffered an adverse employment action directly related to his membership in a protected class pursuant to the ADEA, when he was forced to resign in lieu of termination, and subsequently obstructed by Defendant from securing gainful employment after separating from Defendant. Finally, Plaintiff has identified younger similarly-situated employees of Defendant who were treated more favorably than Plaintiff, giving rise to an inference of disparate treatment.

59. The work environment and adverse action that Plaintiff was subjected to materially affected the terms, privileges, and conditions of his employment.

60. Defendant knew that Plaintiff was over the age of 40 prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his age.

61. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his age.

62. Defendant treated Plaintiff in a way that adversely affected his status as an employee because of his age.

63. Similarly situated younger employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and his workplace conditions.

64. Plaintiff's age was a determining factor in Defendant's unlawful conduct toward Plaintiff.

65. Plaintiff's age was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

66. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

67. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his age.

68. Defendant discriminated against Plaintiff because of his age by engaging in, tolerating, or failing to prevent age discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

69. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

70. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, and costs – and is entitled to all available legal and equitable remedies.

71. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

72. Further, Defendant's treatment and actions are ongoing.

73. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

74. Similarly situated younger employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

75. By law, the Alexandria Sheriff's Office must comply with the ADEA, but through its conduct has violated the ADEA.

## COUNT IV

## VIOLATION OF TITLE VII – RETALIATION

76. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

77. Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

78. Here, the Plaintiff faced retaliation for his prior EEOC activities, as Defendant obstructed him from obtaining gainful employment after his resignation by neglecting to indicate in his personnel records that he had retired, instead showing to prospective employers a personnel record indicating that Mr. Sims had resigned in lieu of termination, and maintaining records of prior, unfounded disciplinary charges, thereby disqualifying him from employment with other law enforcement offices.

79. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his protected activities in violation of Title VII.

80. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed

by Plaintiff directly, advised by an EEOC representative, or otherwise should have known that Plaintiff had filed EEOC charges.

81. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

82. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

83. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

84. Similarly situated younger, non-Black employees were not subjected to the same, similar, or any adverse treatment.

85. Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

86. Defendant's actions were intentional, reckless, and malicious.

87. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

88. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

89. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation in protected activities.

90. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

91.  Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions are ongoing.

92.  As a direct and proximate cause of Defendant's conduct alleged throughout this complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages—including but not limited to past and future loss of income, benefits, and career opportunities—and is entitled to all available legal and equitable remedies.

93.  Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

94.  The Alexandria Sheriff's Office must comply with Title VII, and by and through its conduct, has violated the law.

## COUNT V

**SECTION 1983 CLAIM FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER SECTION 1981 OF THE CIVIL RIGHTS ACT**

95.  Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

96.  Plaintiff brings claims of race and age discrimination and retaliation against Defendant for its violations of 42 U.S.C. §1981 through 42 U.S.C. § 1983, for the deprivation of his property and liberty interests as protected by the 14th Amendment to the U.S. Constitution and these federal statutes.

97.  Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations.

98. The Defendant, and its responsible management officials, under 42 U.S.C. § 1983 are persons who acted "under the color of state law."

99. Defendant, the Alexandria Sheriff's Office, unlawfully deprived Plaintiff of his due process rights in violation of Section 1981 of the Civil Rights Act.

100. Defendant treated Plaintiff disparately or pretextually in the terms and conditions of his employment compared with the way non-Black employees, employees under the age of forty (40), or employees that had not engaged in protected activity, were treated.

101. Plaintiff alleges that as a result of his being Black, over the age of 40, or because he engaged in protected activities, he was illegally harassed, subjected to a pattern of harassment and disparate treatment, forced to retire from his position after approximately twelve years of satisfactory performance, and subsequently obstructed in his efforts to obtain gainful employment after leaving Defendant.

102. The acts described above are part of an institutional practice or custom, constituting an official policy of the Alexandria Sheriff's Office to cover up employee misconduct, discrimination, and retaliation against fellow employees who stand up against the Alexandria Sheriff's Office for violations of their civil rights that should protect them from discrimination and retaliation in the workplace.

103. At all times relevant hereto, Defendant acted pursuant to a custom or policy of the Alexandria Sheriff's Office.

104. Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the school system.

105. As a Black man, Plaintiff is a member of a protected class.

106. As a person over the age of 40, Plaintiff is a member of a protected class.

107. Because of his race, age, and engagement in statutorily protected activities, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1983.

108. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

109. Defendant knew that Plaintiff is Black and over the age of forty (40) prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his race and age.

110. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race and age.

111. Defendant has limited, segregated, and classified Plaintiff in a way that deprived his of employment opportunities and otherwise adversely affected his status as an employee, because of his race and age.

112. Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

113. Plaintiff's allegations clearly show a custom of discrimination as required by Section 1983.

114. Plaintiff's race and age were a determining factor in Defendant's unlawful conduct toward Plaintiff.

115. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

116. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race and age.

**COUNT VI**

**VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT (VHRA), AS AMENDED BY THE VIRGINIA VALUES ACT (VVA)**

117. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

118. The Virginia Human Rights Act (VHRA), Va. Code Ann. §§ 2.2-3900 *et seq*., as amended by the Virginia Values Act (VVA), outlaws discrimination in employment based on race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age (40 years and older), marital status, disability, sexual orientation, gender identity, or status as a veteran.

119. Here, the Plaintiff was subjected to discrimination that is based on race and age, in the form of repeated disciplinary actions and investigations, several of which were deemed unfounded, and severe repercussions for minor infractions such as the decision to seek Plaintiff's termination without any prior written or verbal counseling or opportunity to appeal, as well as the deliberate failure of Defendant to provide prospective future employers with a personnel record simply indicating that Mr. Sims had retired, instead showing that he had resigned in lieu of termination and maintaining documentation of prior unfounded disciplinary charges.

120. The above-mentioned actions by the Defendant towards the Plaintiff demonstrate the discriminatory and prejudicial manner in which the Defendant treated the Plaintiff and his lawful claims.

121. The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race and age.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Clarence Sims, respectfully prays that this Court grant the following relief:

a.  Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII, the ADEA, Section 1983, and the VHRA/VVA;

b.  Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.  Award compensatory damages in the amount of $500,000 (five-hundred thousand dollars and zero cents) that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d.  Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.  Order such other relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: October 26, 2022                                    Respectfully submitted,

/s/ Andrew O. Clarke
Andrew O. Clarke, Esquire
VA Bar ID:  87395
**A. CLARKE LAW, PLLC**
163 Waterfront Street, Suite 440
National Harbor, MD 20745
T: 202.780.9144
E: a.clarke@aclarkelaw.com
*Counsel for Defendant*